UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

| | |
|---|---|
| ALAN RACKEMANN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LISNR, INC., a Delaware Corporation, ADEPT MOBILE, LLC, a Massachusetts Limited Liability Company, and INDIANAPOLIS COLTS, INC., an Indiana Corporation,<br><br>Defendants. | Civil Action No. 3:16-cv-12326-KAR |

## ADEPT MOBILE, LLC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

THE BOSTONIAN LAW GROUP
Jerrold G. Neeff, BBO #635307
30 Newbury St., Third Floor
Boston, MA 02116
T. (617) 312-4904
E-MAIL: Jerry@bostonianlaw.com

# **TABLE OF CONTENTS**

    Page

STATEMENT OF FACTS………………………………………………………………..1

    I.     The parties……………………………………………………………………..1
    II.    Beacon Technology…………………………………………………………...2
    III.   Colts Mobile Application……………………………………………………..3
    IV.   Plaintiff's Allegations…………………………………………………………3
    V.    If the Court Retains This case, The Complaint Should be Dismissed…………..4

        A.    Plaintiff May Not Hold Adept Mobile Liable Under ECPA………………4
        B.    Plaintiff Fails to State a violation of ECPA………………………………..6
            1.  Failure to Allege Private Communications……………………….6
            2.  Failure to Allege Interception by Adept Mobile………………….8
            3.  Failure to Allege Content Acquired……………………………….9
        C.    Plaintiff Fails to Allege that Adept Mobile "Used" Intercepted
            Communications……………………………………………………….10
        D.    Plaintiff Lack Standing Because He Pleads No Cognizable Injury…………11

    VI.   Conclusion

# TABLE OF AUTHORITIES

**FEDERAL CASES**....................................................................................Pages

*Aldrich v. Ruano*, 952 F. Supp. 2d 295, 302–03 (D. Mass. 2013).........................7

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)...........................................8

*A.G. ex rel. Maddox v. Elsevier, Inc.*, 732 F. 3d 77, 81 (1st Cir. 2013)..................7

*Beddall v. State Street Bank & Trust Co.*, 137 F.3d 12, 17 (1st Cir.1998)...............2

*Byrd v. Aaron's, Inc.*, 14 F. Supp. 3d 667, 674–75 (W.D. Pa. 2014)....................5

*Doe v. GTE Corp.*, 347 F.3d 655, 658 (7th Cir. 2003).................................5

*Huff v. Spaw*, 794 F.3d 543, 548 (6th Cir. 2015).....................................6

*In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1088 (N.D. Cal. 2015)....................5

*In re Google Android Consumer Privacy Litig.*, No. 11-MD-02264 JSW, 2013 WL 1283236, at *5 (N.D. Cal. Mar. 26, 2013)........................................................12

*Kirch v. Embarq Mgmt. Co.*, No. 10-2047-JAR, 2011 WL 3651359, at *7 (D. Kan. Aug. 19, 2011).........................................................................4

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 (1992))......................11

*Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018, 1056 (N.D. Cal. 2014)..................12

*San Geronimo Caribe Project, Inc. v. Acevedo-Vila*, 687 F.3d 465, 471 (1st Cir. 2012)...........8

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548, 194 L. Ed. 2d 635 (2016), as revised (May 24, 2016).......................................................................11

*United States v. Councilman*, 418 F.3d 67, 72 (1st Cir. 2005).........................6

*U.S. v. Rose*, 669 F.2d 23, 25 (1st Cir. 1982).......................................7

*Valentine v. WideOpen W. Fin., LLC*, 288 F.R.D. 407, 410 (N.D. Ill. 2012)............9

*Vazquez-Santos v. El Mundo Broad. Corp.*, 283 F. Supp. 2d 561, 567 (D.P.R. 2003)........11

**STATUTES**

The Electronic Communications Privacy Act, 18 U.S.C. §§ 2510 et. seq. ("ECPA")...................................................................6,8,10,11

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

| | |
|---|---|
| ALAN RACKEMANN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LISNR, INC., a Delaware Corporation, ADEPT MOBILE, LLC, a Massachusetts Limited Liability Company, and INDIANAPOLIS COLTS, INC., an Indiana Corporation,<br><br>Defendants. | Civil Action No. 3:16-cv-12326-KAR<br><br><br><br>**ADEPT MOBILE, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS.** |

NOW comes the Defendant and hereby submits its Memorandum of Law in Support of its Rule 12(b)(6) Motion to Dismiss. In that regard, the Defendant has assented to Indianapolis Colts, Inc.'s Motion to Transfer Venue. In support of its 12(b)(6) Motion, the Defendant sets forth the following:

**STATEMENT OF FACTS**

**I.     The Parties**

The Indianapolis Colts, Inc. (hereinafter the "Colts") are a professional football team that competes in the National Football League ("NFL"). The Colts are a company incorporated in Delaware, with a principal place of business in Indianapolis, Indiana. (Compl. ¶ 9.) Lisnr, Inc.

1

(hereinafter "Lisnr") is a technology company incorporated in Delaware, with its principal place of business in Cincinnati, Ohio. (*Id.* ¶ 7.) Lisnr developed the "beacon technology" at issue in the Complaint. (*Id.* ¶ 3.) Adept Mobile, LLC (hereinafter "Adept Mobile") is a company incorporated in Massachusetts, with its principal place of business in Amherst, Massachusetts. (*Id.* ¶ 8.) Adept Mobile develops and distributes the Colts' mobile application. (*Id.* ¶ 3.)[1]

## II. Beacon Technology

Beacon technology is widely used by companies including retail stores, hotels, sports venues, and airlines to send users of their mobile applications personalized messages based on the user's location. *See* H.O. Maycotte, *Beacon Technology: The Where, What, Who, How and Why*, Forbes, *available* at http://www.forbes.com/sites/homaycotte/2015/09/01/beacon-technology-the-what-who-how-why-and-where/#4523a59e4fc1 (last visited January, 2017).[2] By using beacons, companies can offer new services, experiences, and promotions to users of their mobile applications. For example, sports teams have used beacons to offer seat upgrades to fans, based on a fan's location within a stadium. *Id.*

Beacons are generally small devices that emit radio signals. (Compl. ¶¶ 17-18.) These signals can be detected by nearby smartphones that run the mobile application associated with the beacon. When a signal is detected, the beacon can send a message to customers through the mobile application. Beacon technology allows businesses to "target specific consumers and send

---

[1] This is the second lawsuit that Plaintiff has filed. Plaintiff first filed suit in the Western District of Pennsylvania against the Colts, Lisnr, and Yinzcam, a company that Plaintiff previously alleged developed the Colts mobile application. Plaintiff voluntarily dismissed that lawsuit. *See Rackemann v. Indianapolis Colts, et al*, No. 2:16-cv-01573, Dkt. # 9 (W.D. Pa. filed Nov. 18, 2016).

[2] The Court may consider this article, which is incorporated by reference in the Complaint (Compl. ¶ 17). *See Beddall v. State Street Bank & Trust Co.*, 137 F.3d 12, 17 (1st Cir.1998) ("[D]ocuments whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss.") (citation omitted).

them tailored content, promotions, or advertisements based on their location." (*Id.* ¶ 3.) Unlike traditional beacons that relied upon Bluetooth technology, Lisnr's technology uses "inaudible sound waves." *See Lisnr Lands Intel Capital and $10 Million in Series B Funding, available at* http://lisnr.com/portfolio-items/proximity-3/ (last visited January, 2017).[3] The Lisnr technology allows a speaker to be used as a beacon, by playing an "inaudible digital sound file." *Id.* To "hear" the inaudible Lisnr audio beacon, the device must be "near that speaker." (Compl. ¶ 22.) For this technology to work, a user's microphone listens for the Lisnr audio signals. (*Id.* ¶ 24.)

### III. Colts Mobile Application

The Colts mobile application "provides an interactive experience for fans by delivering scores, news, and other information relevant to the organization." (*Id.* ¶ 2.) Users who download the Colts mobile application to their smartphones are asked for permission to use their phone's microphone function. (*Id.* ¶ 26.)

### IV. Plaintiff's Allegations

Plaintiff alleges that he downloaded the Colts mobile application "sometime in 2012" "to follow the progress of the Indianapolis Colts." (*Id.* ¶ 34). In 2016, the Lisnr technology was integrated into the mobile application. (*Id.* ¶ 3.) Plaintiff "stopped using the App on or about mid-September 2016." (*Id.* ¶34.)

The Complaint alleges that the microphones of smartphones onto which the Colts app had been downloaded were activated on "specified dates and at [Defendants'] desired times." (*Id.* ¶ 30.) At such dates and times, according to the Complaint, the microphone would be activated if the mobile application was open or running in the background. (*Id.* ¶ 33.) Based on a "forensic accounting" reportedly conducted of the Colts application, Plaintiff alleges that the

---

[3] The Court may consider Lisnr's website because Plaintiff cites to it in his Complaint. (Compl. ¶¶ 3, 23.) *See supra*, note 2.

3

microphones were activated on October 9, 2016 for a total of one hour and forty-five minutes. (*Id.* ¶¶ 29–31.)

Although the Complaint acknowledges that Lisnr's beacon technology uses "inaudible digital sound file[s]" (*Id.* ¶ 23), Plaintiff claims that when a user's microphone is activated, the mobile application "listens to and records *all* audio within range — including consumer conversations." (*Id.* ¶ 4.) The Complaint alleges that when Plaintiff took his phone "to places where he would have private conversations and the App was continuously running on his phone, Defendants App listened-in to [his] private oral communications." (*Id.* ¶ 36.)

According to Plaintiff, when a user's microphone is activated the mobile application "temporarily records portions of the audio for analysis." (*Id.* ¶ 32.) The application then "monitor[s] the picked-up audio for any of the Lisnr beacon tones." (*Id.*) If a Lisnr tone is detected, Plaintiff claims, "the App will automatically respond by, for instance, displaying banner advertisements to the consumer or showing highlights or other information." (*Id.*) Plaintiff does not allege he received any advertisements or other information as a result of the Lisnr technology. The Defendant, Adept Mobile, is only a named Defendant in this suit to the extent that it develops and distributes the Colt's mobile application.

V.     **If the Court Retains This Case, The Complaint Should be Dismissed.**

If the Court were to retain jurisdiction over this case, the Complaint should be dismissed under Rule 12(b)(6) because Plaintiff fails to state a claim against the Adept Mobile.

A.     **Plaintiff May Not Hold Adept Mobile Liable Under ECPA.**

Civil liability under ECPA "attaches only to the party that **actually intercepted a communication**." (Emphasis added). *Kirch v. Embarq Mgmt. Co.*, No. 10-2047-JAR, 2011 WL 3651359, at *7 (D. Kan. Aug. 19, 2011). The Complaint fails to state a claim that Adept Mobile intercepted Plaintiff's conversations. For example, the Complaint alleges that "Lisnr's software"

4

enables the interception of his oral communications. (*See, e.g.,* Compl. ¶¶ 3, 61.) The Complaint further alleges that "Lisnr owns and controls the rule issuing server that causes consumers' microphones to activate" and that "[w]ithout Lisnr's server, consumers' microphones would not be activated." (*Id.* ¶ 63.) As to the Colts, Plaintiff alleges that the Colts "leveraged its mobile application . . . to serve as the host of the Lisnr audio beacon technology." (*Id.* ¶ 62.) Finally, and as to Adept Mobile, perhaps the weakest link to any party, plaintiff merely alleges the following:

"Defendant Adept Mobile develops and maintains the codebase of the App and ensures the deliverability of the App to the Google Play Store and, ultimately, consumers. Adept Mobile integrated the Lisnr audio beacon technology into the Colts App, conducted testing and analysis, and then issued the App for distribution through the Google Play Store and to consumers. Adept Mobile's actions are an integral link in the development and distribution of the listening device (ie. the App) that performs the unlawful interception at issue. (Compl. ¶¶ 64)." **Nowhere does the Complaint allege, however, that Adept Mobile actually intercepted those communications at issue.** (Emphasis added).

Allegations that one party "provided a framework through which *other parties* . . . were able to intercept communications" fail to state a claim under ECPA. *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1088 (N.D. Cal. 2015) (emphasis in original). In fact, this theory of liability has been "consistently rejected." *Id.; see also Kirsch*, 2011 WL 3651359, at *7 (holding that ECPA does not authorize liability "as a procurer, aider, abettor, or co-conspirator"); *Doe v. GTE Corp.*, 347 F.3d 655, 658 (7th Cir. 2003) ("nothing in [ECPA] condemns assistants, as opposed to those who directly perpetrate the act"); *Byrd v. Aaron's, Inc.*, 14 F. Supp. 3d 667, 674–75 (W.D. Pa. 2014) ("[s]econdary liability no longer exists under the current statutory structure of the

5

ECPA.").

For this reason, the *In re Carrier IQ* court held that even if developers of the disputed software could be held liable for intercepting communications, the manufacturers of devices on which such software was installed were not liable as a matter of law, absent a claim that the manufacturers "themselves 'seized' or 'redirected' any communications." *Id.* at 1088. Because there were no such allegations, the court dismissed the ECPA claim against the manufacturers. Plaintiff's allegations against Adept Mobile are largely identical to the allegations made against the manufacturers in *In re Carrier IQ*, and, as such, the result should be the same — dismissal of the Complaint as a matter of law.

### B. Plaintiff Fails to State a Violation of ECPA.

The Wiretap Act, as amended by ECPA, "makes it an offense to intentionally intercept [or] endeavor[ ] to intercept . . . any wire, oral, or electronic communication." *United States v. Councilman*, 418 F.3d 67, 72 (1st Cir. 2005) (internal quotation marks omitted). Plaintiff fails to state a claim under ECPA for three independent reasons, any one of which warrants dismissal. First, the Complaint contains only conclusory allegations that Plaintiff's *private oral communications* were intercepted. Second, the Complaint fails to allege the elements of an *interception* under ECPA. Third, the Complaint fails to allege that *content* was acquired, as ECPA also requires.

#### 1. Failure to Allege Private Communications

ECPA prohibits the interception of "oral communications," which are defined as those communications "uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation." 18 U.S.C. § 2510(2). ECPA thus does not "protect every face-to-face conversation from interception." *Huff v. Spaw*, 794 F.3d 543, 548 (6th Cir. 2015). Rather, a communication is protected only if "the speaker

6

ha[s] a subjective expectation of privacy that is objectively reasonable." *U.S. v. Rose*, 669 F.2d 23, 25 (1st Cir. 1982). This fact-dependent analysis turns on issues including "the nature of the location where the interception took place (whether it was in a private or public locale) . . . ; the subject matter of the conversation (e.g., business versus personal) . . . the proximity or potential of other individuals to overhear the conversations . . . [and] the affirmative actions taken by the speaker to shield his privacy." *Aldrich v. Ruano*, 952 F. Supp. 2d 295, 302–03 (D. Mass. 2013).

To state a claim for unlawful interception, the Complaint must plead facts that would enable a trier of fact to conclude that a conversation in fact occurred, in a location and involving parties as to which a reasonable person would expect privacy, and that such conversation was unlawfully intercepted. Plaintiff fails to hit any of these marks. Instead, Plaintiff's conclusory assertions that his "private conversations" were intercepted (Compl. ¶¶ 35–36), even if "disguised as factual," "omit any meaningful factual context" and must be "treated as what they are: naked conclusions." *A.G. ex rel. Maddox v. Elsevier, Inc.*, 732 F. 3d 77, 81 (1st Cir. 2013).

Since Plaintiff conducted a "forensic accounting" of the mobile application to determine the "specified dates and . . . times" during which users' microphones were activated, (Compl. ¶¶ 29–31), he should be able to identify the location and date when his private communications were allegedly intercepted. Yet, the Complaint identifies only *one date* on which Plaintiff alleges that the app actually activated user microphones — October 9, 2016.[4] (*Id.* ¶¶ 30–31.) This date is several weeks *after Plaintiff stopped using the mobile application* in "mid-September 2016." (*Id.* ¶ 35.) Thus, by Plaintiff's own admission, no private conversation he might have engaged in on October 9 was intercepted by a mobile application that he no longer used. The Complaint identifies no dates of alleged interceptions before Plaintiff discontinued

---

[4] Although Plaintiff alleges that activation of the Colts app was "secret," it is matter of public record that the Colts played the Chicago Bears at Lucas-Oil Stadium on Sunday, October 9.

7

using the Colts app. In fact, the Complaint is devoid of factual information about the participants, subject matter, or locations of *any* conversations, much less any private conversations, involving Plaintiff at any time.

Such a "[t]hreadbare recital[] of the elements of a cause of action, supported by mere conclusory statements, do[es] not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This Court is "not bound to accept as true a legal conclusion couched as a factual allegation," nor should it credit "naked assertion[s] devoid of further factual enhancement." *San Geronimo Caribe Project, Inc. v. Acevedo-Vila*, 687 F.3d 465, 471 (1st Cir. 2012) (internal citation and quotation marks omitted).

Plaintiff's failure to identify any private communication of his that was purportedly intercepted requires the dismissal of his claim.

### 2. Failure to Allege Interception By Adept Mobile

ECPA makes it unlawful to "intentionally intercept[]" wire, oral, or electronic communications." 18 U.S.C. § 2511(1)(a). ECPA defines interception as "the aural or other *acquisition* of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4) (emphasis added). The Complaint fails to allege Adept Mobile ever *acquired* any oral communications of Plaintiff — and thus fails to allege an interception.

While ECPA does not define "acquisition," courts have recognized that for purposes of ECPA, the term means the "act of acquiring, or *coming into possession of*" the communication. *United States v. Smith,* 155 F.3d 1051, 1055 n.7 (emphasis added) (9th Cir. 1998). This reading is based on the word's "'ordinary meaning.'" *In re Carrier IQ*, 78 F. Supp. 3d at 1076.[5] "It

---

[5] Merriam-Webster's Dictionary defines "acquisition" as "the act of acquiring something." Acquisition, Merriam-Webster, *available at* https://www.merriam-

8

follows that in order to 'intercept' a communication, one must come into possession or control of the substance, purport, or meaning of that communication." *Kirch*, 2011 WL 3651359, at *6. When there is no evidence that a defendant "itself acquired the contents of any communications," an ECPA claim fails. *Id.* at *6.

To state an interception claim, therefore, Plaintiff must allege that Adept Mobile came into possession of the allegedly intercepted oral communications. But the Complaint does not identify any oral communication that came into the Colt's or Adept Mobile's possession. Nor does Plaintiff allege the mobile application ever caused any intercepted oral communications to be sent to any server or other device maintained by the Colts or Adept Mobile.

When there are "no allegations that defendants themselves acquired the contents of any of Plaintiff's communications," it is "fatal" to an ECPA claim. *In re Carrier IQ*, 78 F. Supp. 3d at 1090 (granting motion to dismiss); *see also Valentine v. WideOpen W. Fin., LLC*, 288 F.R.D. 407, 410 (N.D. Ill. 2012) (dismissing ECPA claim when "the *facts* that Plaintiffs allege . . . make it clear from the face of the complaint that [the defendant] merely facilitated [another party's] acquisition") (emphasis in original). Because the Complaint fails to allege that Adept Mobile acquired any oral communications, Plaintiff fails to state any "interception" claim within the meaning of the Act. As such, as a matter of law, the Complaint should be dismissed.

### 3. **Failure to Allege "Content" Acquired**

The Complaint fails to adequately plead another prerequisite for potential liability under ECPA — that any "interception" involved the "acquisition of the *contents* of any wire,

---

webster.com/dictionary/acquisition (last visited January, 2017). Acquire, in turn, is defined as "to come into possession or control of" a thing. Acquire, Merriam-Webster, *available at* https://www.merriam-webster.com/dictionary/acquire (last visited January, 2017). Black's Law similarly defines acquisition as "[t]he gaining of possession or control over something." Acquisition, Black's Law Dictionary (10th ed. 2014).

9

electronic, or oral communication" *See* 18 U.S.C. § 2511(1)(a) (prohibiting interception of oral communications); *id.* at § 2510(4) (defining "intercept" to mean the "acquisition of the contents of any . . oral communication"). Content, in turn, is defined as "any information concerning the substance, purport, or meaning of that [oral] communication." 18 U.S.C. § 2510(8).

The Complaint contains no factual allegations plausibly suggesting that the *content* of Plaintiff's oral communications was intercepted. To the contrary, the only factual allegations concerning how the mobile application works state that it "temporarily records" only "portions" of audio to "analyze and monitor" "for any of the Lisnr beacon tones." (Compl. ¶ 32.) Plaintiff acknowledges that those tones are "inaudible" — *i.e.*, not emitted at the same frequency as "audible" oral communications.[6] (*Id.* ¶ 23.) Put simply, the Complaint does not allege that Adept Mobile acquired the "content" of any conversations of Plaintiff.

### C.  Plaintiff Fails to Allege that Adept Mobile "Used" Intercepted Communications

Plaintiff's separate claim that Adept Mobile "used" communications, (*Id.* ¶ 60), in violation of ECPA fails for at least two reasons.

*First*, a defendant is liable for "using" an oral communication under ECPA only if the communication was illegally intercepted in the first instance. 18 U.S.C. § 2511(1)(d). Plaintiff's failure to adequately plead an interception, for the reasons set forth above, therefore precludes any "use" claim as a matter of law. *See, e.g., Vazquez-Santos v. El Mundo Broad. Corp.*, 283 F. Supp. 2d 561, 567 (D.P.R. 2003) ("If the interception itself was not unlawful, then the

---

[6] Lisnr's website, which the Complaint cites on two occasions, confirms its software does not detect audible sounds. *See At Lisnr, We Take Your Privacy Seriously, available at* http://lisnr.com/blog/at-lisnr-we-take-your-privacy-seriously (last visited January, 2017). A court may "augment" "facts and inferences [in the Complaint] with data points gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice." *A.G. ex rel. Maddox v. v. Elsevier, Inc.*, 732 F.3d 77, 80 (1st Cir. 2013).

10

subsequent use or disclosure of intercepted information is not unlawful.").

*Second*, the Complaint includes no factual basis for the conclusory allegation that Adept Mobile used the *content* of any allegedly intercepted communications, as distinct from *non-content* information obtained through the Lisnr technology. Plaintiff claims that Defendants "use the contents of [his purportedly intercepted oral] communications to their economic benefit, including for marketing purposes." (Compl. ¶ 60.) However, the lone "marketing" allegation in the Complaint is that when the mobile application "*hears a [Lisnr] transmitter's audio signal . . . the App will automatically respond by, for instance, displaying banner advertisements to the consumer . . .*" (*Id.* ¶ 32.) (emphasis added.) Plaintiff concedes that the Lisnr signals are "inaudible." (*Id.* ¶ 23.) As previously explained, such inaudible files cannot contain any "information concerning the substance, purport, or meaning of [a] communication" and thus do not constitute content. *See* 18 U.S.C. § 2510(8) (defining content). Moreover, Plaintiff does not allege that he received any banner advertisements as a result of the Lisnr technology.

For the foregoing reasons, the Complaint fails to state a "use" claim under ECPA.

**D.     Plaintiff Lacks Standing Because He Pleads No Cognizable Injury-in-Fact.**

Even if the Complaint were construed to allege an ECPA violation, it must still be dismissed for an entirely separate reason: Plaintiff fails to demonstrate an injury-in-fact.

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548, 194 L. Ed. 2d 635 (2016), as revised (May 24, 2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 (1992)). Even in "the context of a statutory violation," Article III "requires a concrete injury." *Spokeo*, 136 S. Ct. at 1549.

Plaintiff alleges a violation of ECPA, but claims only that putative class members

11

suffered "wear and tear on their smartphones, consuming the battery life of their smartphones, and diminishing their use, enjoyment, and utility of their devices." (Compl. ¶ 65.) However, when a plaintiff has not "quantified or otherwise articulated the alleged resource usage, [he] fail[s] to allege an injury that can serve as the basis of standing." *Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018, 1056 (N.D. Cal. 2014). The Complaint's generalized assertions are thus wholly insufficient.

While allegations of "systemic" resource usage may in some instances be sufficient to confer standing, Plaintiff alleges no such thing. *See, e.g.*, *In re Carrier IQ, Inc.*, 78 F. Supp. 3d at 1066-67 (distinguishing between "systemic" and "episodic" effects on "the resources of Plaintiffs' mobile devices."). For example, the Complaint does not allege the microphone on Plaintiff's phone was always on, continuously draining the phone's battery. (Compl. ¶ 30) (alleging activation only on "specified dates and . . . times"). Nor does Plaintiff claim that any alleged activation of the microphone interrupted services on his device. *Cf. In re Google Android Consumer Privacy Litig.*, No. 11-MD-02264 JSW, 2013 WL 1283236, at *5 (N.D. Cal. Mar. 26, 2013). Although Plaintiff summarily alleges battery usage and "wear and tear" on his phone, he no longer even used the Colts app on the date that his Complaint alleges the microphone was activated. *See supra*, p. 14. Plaintiff accordingly fails to plead the requisite constitutional injury to proceed in this Court.

## VI. Conclusion

For the foregoing reasons, this Court should transfer the action to the United States District Court for the Southern District of Indiana or, in the alternative, dismiss the Complaint.

                          Respectfully submitted,

                          DEFENDANT,
                          ADEPT MOBILE, LLC
                          BY ITS ATTORNEY,

DATED: January 23, 2017           /s/ Jerrold G. Neeff
                                        Jerrold G. Neeff
                                        BBO# 635307
                                        The Bostonian Law Group
                                        30 Newbury, Third Floor
                                        Boston, MA 02116
                                        (617) 312-4904
                                        Jerry@Bostonianlaw.com

## CERTIFICATE OF SERVICE

I do hereby certify that a true copy of Defendant's Memorandum of Law in Support of its Motion to Dismiss was served on all counsel of record on January 23, 2017 pursuant to this Court's CM/ECF electronic filing system.

                                                    /s/ Jerrold G. Neeff